**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHERINE FINGER,<br><br>                Plaintiff,<br><br>    v.<br><br>1LIFE HEALTHCARE, INC., AMIR DAN RUBIN, PAUL R. AUVIL, MARK S. BLUMENKRANZ, BRUCE W. DUNLEVIE, KALEN F. HOLMES, DAVID P. KENNEDY, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, SCOTT C. TAYLOR, and MARY ANN TOCIO,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against 1Life Healthcare, Inc. ("1Life" or the "Company") and the members of 1Life's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell 1Life to Amazon.com, Inc. ("Amazon") (the "Proposed Transaction").

2.	On July 20, 2022, 1Life entered into an Agreement and Plan of Merger with Amazon and Amazon's wholly-owned subsidiary Negroni Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, 1Life stockholders will be entitled to receive $18.00 in cash per share of 1Life common stock.

2.	On August 24, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that 1Life stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections and the financial analyses that support the fairness opinions provided by the Company's financial advisor, Morgan Stanley & Co. LLC's ("Morgan Stanley"); and (ii) potential conflicts of interest faced by Company insiders.

3.	The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as 1Life stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

4.	The special meeting for 1Life stockholders to vote on the Proposed Transaction is currently scheduled for September 22, 2022.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and 1Life's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.	This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. 1Life's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of 1Life common stock.

9. Defendant 1Life is a Delaware corporation, with its principal executive offices located at One Embarcadero Center, Suite 1900, San Francisco, California 94111. 1Life's shares trade on the Nasdaq Global Select Market under the ticker symbol "ONEM."

10. Defendant Amir Dan Rubin has been Chairman of the Board and Chief Executive Officer, President and a director of the Company at all relevant times.

11. Defendant Paul R. Auvil has been a director of the Company at all relevant times.

12. Defendant Mark S. Blumenkranz has been a director of the Company at all relevant times.

13. Defendant Bruce W. Dunlevie has been a director of the Company at all relevant times.

14. Defendant Kalen F. Holmes has been a director of the Company at all relevant times.

15. Defendant David P. Kennedy has been a director of the Company at all relevant times.

16. Defendant Freda Lewis-Hall has been a director of the Company at all relevant times.

17. Defendant Robert R. Schmidt has been a director of the Company at all relevant times.

18. Defendant Scott C. Taylor has been a director of the Company at all relevant times.

19. Defendant Mary Ann Tocio has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 10-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. 1Life operates a membership-based primary care platform under the One Medical brand. The Company has developed a healthcare membership model based on direct consumer enrollment, as well as third-party sponsorship. 1Life's membership model includes seamless access to 24/7 digital health services paired with inviting in-office care routinely covered under health insurance programs. The Company also offers administrative and managerial services pursuant to contracts with physician-owned professional corporations. As of June 30, 2022, it had 750,000 consumer and enterprise members, 40,000 At-Risk members, 204 medical offices in 25 markets, and over 8,500 enterprise clients in the United States.

**The Proposed Transaction**

22. On July 21, 2022, 1Life announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SEATTLE & SAN FRANCISCO—(BUSINESS WIRE)—July 21, 2022—Today Amazon (NASDAQ:AMZN) and One Medical (NASDAQ:ONEM) announced that they have entered into a definitive merger agreement under which Amazon will acquire One Medical. One Medical is a human-centered, technology-powered national primary care organization on a mission to make quality care more affordable, accessible, and enjoyable through a seamless combination of in-person, digital, and virtual care services that are convenient to where people work, shop, and live.
>
> "We think health care is high on the list of experiences that need reinvention. Booking an appointment, waiting weeks or even months to be seen, taking time off work, driving to a clinic, finding a parking spot, waiting in the waiting room then the exam room for what is too often a rushed few minutes with a doctor, then making another trip to a pharmacy – we see lots of opportunity to both improve the quality of the experience *and* give people back valuable time in their days," said Neil Lindsay, SVP of Amazon Health Services. "We love inventing to make what should be easy easier and we want to be one of the companies that helps dramatically improve the healthcare experience over the next several years. Together with One Medical's human-centered and technology-powered approach to health care, we believe we can and will help more people get better care, when and how they need it. We look forward to delivering on that long-term mission."
>
> "The opportunity to transform health care and improve outcomes by combining One Medical's human-centered and technology-powered model and exceptional team with Amazon's customer obsession, history of invention, and willingness to invest in the long-term is so exciting," said Amir Dan Rubin, One Medical CEO. "There is an immense opportunity to make the health care experience more accessible, affordable, and even enjoyable for patients, providers, and payers. We look forward to innovating and expanding access to quality healthcare services, together."
>
> Amazon will acquire One Medical for $18 per share in an all-cash transaction valued at approximately $3.9 billion, including One Medical's net debt. Completion of the transaction is subject to customary closing conditions, including approval by One Medical's shareholders and regulatory approval. On completion, Amir Dan Rubin will remain as CEO of One Medical.

**The Materially Incomplete and Misleading Proxy Statement**

5

23. On August 24, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that 1Life stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; and (ii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning 1Life's Financial Projections and Morgan Stanley's Financial Analyses*

24. The Proxy Statement fails to disclose material information concerning the financial projections for 1Life.

25. With respect to each of 1Life management's Management Case A and Management Case B projections, the Proxy Statement fails to disclose all line items underlying the calculation of: (i) Care Margin; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

26. The Proxy Statement also fails to disclose material information concerning Morgan Stanley's financial analyses.

27. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the estimated net debt of 1Life, assuming a future projected common equity issuance; (ii) the number of fully diluted common shares, including the dilutive impact resulting from a future projected common equity issuance; and (iii) the inputs and assumptions underlying the discount rate of 14.8%.

28. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projection metric utilized to calculate the terminal values and quantification thereof; (ii) the range of terminal values for the Company; (iii) the inputs and

assumptions underlying the discount rates ranging from 12.9% to 14.0%; (iv) 1Life's net cash; (v) the present value of a future projected common equity issuance; and (vi) 1Life's fully diluted outstanding shares.

29. With respect to Morgan Stanley's *Public Trading Benchmarks Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected companies analyzed by Morgan Stanley; (ii) 1Life's net cash; and (iii) 1Life's fully diluted outstanding shares.

30. With respect to Morgan Stanley's *Precedent Transactions - Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions analyzed; and (ii) the individual premiums observed for each transaction.

31. With respect to Morgan Stanley's *Broker Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

32. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

33. Specifically, the Proxy Statement fails to disclose whether any of Amazon's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

34. In sum, the omission of the above-referenced information renders statements in the "Financial Projections," "Opinion of Morgan Stanley & Co. LLC," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of 1Life will be unable to make a sufficiently

7

informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and 1Life**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  1Life is liable as the issuer of these statements.

37. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of 1Life within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of 1Life and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of

the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

47. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of 1Life, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 31, 2022                                   **ACOCELLI LAW, PLLC**

                                                   By  */s/ Richard A. Acocelli*
                                                       Richard A. Acocelli
                                                       33 Flying Point Road, Suite 131
                                                       Southampton, NY 11968
                                                       Tel: (631) 204-6187
                                                       Email: racocelli@acocellilaw.com

                                                       *Attorneys for Plaintiff*